RMB/BPG/PG  7536-07001

# IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SUZANNE E. MALEC MCKENNA, as Executor and Personal Representative of the Estate of MICHAEL R. MALEC MCKENNA, deceased | ) ) ) ) ) | |
| Plaintiffs, | ) ) | 07 CV 83 Judge St. Eve |
| -vs- | ) ) | Magistrate Judge Keys |
| ALLIEDBARTON SECURITY SERVICES, LLC A/K/A ALLIEDBARTON SECURITY SERVICES; UST-GEPT, a Joint Venture; GE ASSET MANAGEMENT, INC., NACA, LTD. PARTNERSHIP; NACA MADISON, LLC.; NACA REALTY CORPORATION; NACA LIMITED PARTNERSHIP, an affiliate of General Electric Pension Trust; UST XV MADISON, LTD., an Affiliate of Estein & Associates; MB REAL ESTATE SERVICES, L.L.C., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS

NOW COME Defendants, UST-GEPT; GE ASSET MANAGEMENT, INC.; NACA LTD. PARTNERSHIP; NACA MADISON, LLC.; NACA REALTY CORPORATION; NACA LIMITED PARTNERSHIP; UST XV MADISON, LTD., and MB REAL ESTATE SERVICES, LLC., ("alleged ownership defendants") by and through one of their attorneys, Robert M. Burke of JOHNSON AND BELL, LTD., and for their Memorandum in Support of their Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), state as follows:

## I. BACKGROUND

Plaintiff, the Executor and Personal Representative of Michael McKenna's Estate, filed this action against the defendants in the Circuit Court of Cook County on December 29, 2006. Subsequently, and in accordance with the applicable statutes, this case was removed to this District Court. Plaintiff alleges that plaintiff's decedent was shot and killed by an individual later identified as Joseph Jackson at the office building located at 500 W. Madison in Chicago, Illinois. In her complaint, plaintiff claims that each of the "alleged ownership defendants" possessed an ownership interest in the property at 500 W. Madison, and therefore, owed a duty to protect the decedent from the criminal acts of Joseph Jackson.

Defendants now move to dismiss Plaintiff's action, pursuant to FRCP 12(b)(6), on the basis that Plaintiff's complaint fails to state a cause of action under the applicable Illinois substantive law. In particular, Illinois law does not impose a duty on a landlord to protect a tenant against the criminal acts of third parties. While there are very limited exceptions to this rule, none apply to this action.

## II. APPLICATION OF ILLINOIS SUBSTANTIVE LAW AND 12(B)(6) STANDARD OF REVIEW

The subject matter jurisdiction of the District Court is premised on diversity jurisdiction under 28 U.S.C. §1332. It is well settled that, "In a case where subject matter jurisdiction in federal court is premised on diversity jurisdiction under 28 U.S.C. §1332, we (the Seventh Circuit Court of Appeals) apply the substantive law of the forum state." *Davis v.G.N. Mortgage Corp.,* 396 F.3d 869, 876 (7th Cir. 2005) (clarification added); *Merrill v. Trump Indiana, Inc*., 320 F.3d 729 (7th Cir. 2003). A complaint may be

dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. *Lekas v. Briley*, 405 F.3d 602, 606 (7th Cir. 2005). A complaint should be dismissed for failure to state a claim if no relief can be granted under any set of facts that could be proven consistent with its allegations. *Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995). However, in order to withstand a 12(b)(6) motion to dismiss, a complaint must at least include "the operative facts upon which a plaintiff bases his claim." *Lucien v. Preiner,* 967 F.2d 1166, 1168 (7th Cir. 1992).

### III. ARGUMENT

#### A. Under Illinois Law, The Ownership Defendants Owed No Duty To The Plaintiff To Protect Plaintiff From The Criminal Acts Of A Third Party.

The Illinois Supreme Court, in *Pippin v. The Chicago Housing Authority*, confirmed that under the common law in Illinois, "a landlord does not owe a tenant or social guest (licensee) a duty to protect the latter from criminal acts." 78 Ill.2d 204, 208; 399 N.E.2d 596 (1979). See also *Figeroa v. Evangelical Covenant Church*, 879 F.2d 1427, 1430 (7th Cir. 1989); *Morgan v. 253 East Delaware Condominium Association*, 231 Ill.App.3d 208, 211, 595 N.E.2d 36 (1st Dist. 1992).

An examination of Illinois decisions reveals that there are two situations where courts have found an exception to the general rule that a landlord owes no duty to protect tenants from the criminal acts of third parties. The first exception has been applied where the landlord has failed to exercise due care in the maintenance of a building, its security doors, or its immediate environs, which allows access to the building by intruders.

In Illinois, whether a duty exists is a question of law to be decided by the Court. *Ward v. K Mart Corp.*, 136 Ill.2d 132, 140, 554 N.E.2d 223(1990); *Homer v. Pabst Brewing Co.*, 806 F.2d 119, 121 (7th Cir. 1986). In determining whether a duty exists, a

3

court must examine the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on defendant. When the landlord has failed to properly maintain the building and its environs so as to promote and allow unwarranted entry, thus making entry into the building by a criminal reasonably foreseeable, some Illinois Courts have found an exception to the rule that the landlord owes no duty to protect a tenant from the criminal acts of a third party.

The second exception arises where the landlord has voluntarily assumed a duty to protect its tenants; however, in the second scenario, the duty is limited to the extent of the undertaking. *Pippin* at 210, ; *Homer* at 121, . While generally, as stated above, a landlord has no duty to protect one on its property from criminal acts, a landlord's duty can be extended in this regard if it negligently performs a voluntary undertaking. *Pippin* at 209,.

    A.        **As There Is No Allegation that the Criminal Perpetrator Here Gained Access to the Premises Due to the Landowner's Failure to Maintain the Premises, the Landowner Owed No Duty to Prevent the Criminal Act Alleged**

In the first scenario, (*failure to maintain the property cases*), where Courts have considered whether a duty exists, by taking into account the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on defendant, Courts have, as part of their consideration considered whether similar, criminal acts have occurred. Thus, in *Duncavage v. Allen*, 147 Ill.App.3d 88, 497 N.E.2d 433 (1st Dist. 1986), the Court found that evidence of prior criminal acts, coupled with the landlord's failure to maintain the exterior lights or to allow those lights to burn out, his allowance of weeds to grow giving a potential criminal a hiding place, and allowing access to a ladder, which had been used in a similar crime at the same

4

unlockable window, gave rise to a duty to protect the tenant against the perpetrator's criminal acts. Similarly, in *Rowe v. State Bank of Lombard*, 125 Ill. 2d 203, 531 N.E.2d 1358 (1988), the Court imposed a duty where there had been 17 acts of criminal activity at the complex in the two preceding years, and where Plaintiff alleged that the landlord failed to maintain the locks on its doors and failed to account for its master keys, which allowed the perpetrator access to the premises. The Court found that a reasonable person should have foreseen a connection between the missing master key and the extensive, recent criminal activity at the premises. In *Shea v. Preservation Chicago, Inc.*, 206 Ill.App.3d 657, 565 N.E.2d 20 (1st Dist 1990), the Court imposed a duty due to the landlord's failure to repair and maintain an interior security door and lock through which the perpetrator gained access to the premises. There the Court held that similar, prior criminal activity was not *per se* required *in all instances*, but it also recognized that a third party criminal act must have been *reasonably* foreseeable. Whether a criminal act is reasonably foreseeable depends

  In the instant case, there are no allegations in the Complaint that the landowner or landlord failed to maintain the building, that there had been prior similar, violent crimes at the building, or that it was reasonably foreseeable that such failure would allow a criminal to perpetrate acts of violence upon the premises. To the contrary, all of the allegations are aimed at the purported inadequacy of the security force and the alleged failure of the unarmed security officer to physically prevent the perpetrator, who was pointing a loaded gun at him, from forcing his way into the building.

  Courts have repeatedly rejected the imposition of a duty to protect against a criminal act by a third party where the perpetrator did not gain access to the premises

5

because of a defect in the building. In *Kolodziejzak v. Melvin Simon & Associates*, 292 Ill.App.3d 490, 685 N.E.2d 985 (1st Dist. 1997), where the Court recognized that even if the occurrence of a violent crime by a gang member was foreseeable and even though other crimes had been perpetrated on the premises, more was required before a duty could be imposed. The Court, in balancing the costs and burdens of imposing a duty on the landlord to protect others from criminal acts of third parties at a shopping mall, found that Mall's management company owed no duty beyond exercising reasonable care in the hiring of the security company. The Court distinguished *Shea v. Preservation Chicago, Inc.*, stating that the facts of that case, unlike those in *Kolodziejzak*, indicated that the cost of preventing the crime there involved (repairing a door) would have been minimal and that the risks of failing to repair the door and lock mandated undertaking that minimal expense. Likewise, in *Sameer v. Butt*, 343 Ill.App.3d 78, 796 N.E.2d 1063 (1st Dist. 2003), the Court held that while anyone can foresee a crime virtually anywhere at any time, more must be shown before a duty to protect against the crime will be imposed. There must be some prior incident of criminal violence or other reason to reasonably anticipate criminal conduct before a duty will be imposed. *Sameer* at 89. There, the Aragon Ballroom was charged with negligence for failure to prevent, by searching guests, hiring more security officers, or otherwise, a concertgoer from entering the premises with a knife and from failing to prevent two stabbings at the premises. The Court found that it would be too burdensome to impose a duty on the Aragon Ballroom to protect against all criminal attacks.

In the instant case, the involved building is connected to a major public transportation station. The volume of traffic in the building is many times that of the

6

Aragon Ballroom. Since there are no allegations of prior criminal conduct at the involved premises and since there are no allegations that the perpetrator gained entry to the building because of any defect in the building, its doors or locks, which could have been repaired, there is no basis to impose a duty on the building owner or landlord under Illinois law.

### B. The Allegations in Plaintiff's Complaint Fail to Support a Finding that the "Ownership Defendants" Voluntarily Assumed a Duty to Prevent the Criminal Attacks Here Involved

Illinois Courts have repeatedly held that if a duty is to be imposed on a defendant based upon a voluntary undertaking theory, the scope of that duty is limited to the extent of the undertaking. *Pippin* at 210; *Homer* at 121; *Morgan* at 212.

In *Pippin*, the plaintiff filed a wrongful death action against the defendant following the death of the plaintiff's decedent in a building owned and managed by the defendant. 78 Ill.2d 204. The decedent was involved in an altercation, which led to his death, and which took place in the presence of security guards who were employees of a company that contracted with the defendant to provide security for defendant's property. *Id.* At issue in the case was the extent of the defendant's duty to protect plaintiff's decedent from criminal conduct that occurred on defendant's property. *Id.* at 206.

The Supreme Court, which was reviewing the reversal of an order of summary judgment in favor of the defendant, stated, "It is fundamental that there can be no recovery in tort for negligence unless the defendant has breached a duty owed to the plaintiff." *Id.* at 208. While generally, as stated above, a landlord has no duty to protect one on its property from criminal acts, a landlord's duty can be extended in this regard if it negligently performs a voluntary undertaking. *Id.* at 209. As the defendant in *Pippin*

7

entered into a contract with a company to provide security for its property, the plaintiff alleged that defendant's voluntary undertaking of this task amounted to liability for failing to protect plaintiff's decedent from criminal acts committed by others on defendant's property. *Id*. The Supreme Court disagreed with plaintiff's arguments, stating that the defendant's duty to plaintiff's decedent was limited by the extent of the defendant's voluntary undertaking[1]. *Id.* at 210. The Court found that the defendant's duty, which was limited by the extent of its undertaking, was to use reasonable care to hire a qualified security company to provide security services on its property. *Id.* According to the court, "The Authority (defendant) can therefore be liable at most for the negligent hiring of Interstate (the security company)[2]." *Id.* (clarification added). The Court concluded its discussion of these issues by acknowledging that the plaintiff's complaint did contain allegations that the defendant had hired the security company without proper investigation and with negligence, which raised a question of fact regarding the defendant's liability. *Id.* Therefore, summary judgment could not be granted in favor of the defendant. *Id.*

The facts of the *Pippin* case closely follow the facts in the case at bar. It is clear from the above allegations that plaintiff misapprehends the nature of the duty owed by the ownership defendants to the plaintiff's decedent. As plaintiff also states in the complaint, defendant Allied Barton Security Services ("Allied Barton") provided security

---

[1] This premise has been acknowledged by the Seventh Circuit Court of Appeals and courts in the Northern District in cases in which these courts have applied Illinois law. *Homer v. Pabst Brewing Co.,* 806 F.2d 119, 121 (7th Cir. 1986); *Smith v. Lyles*, 822 F.Supp. 541 (N.D. Ill. 1993).

[2] In *Lyles,* the District Court considered a similar issue, and reached the result that the defendant, by voluntarily contracting with a security company, "owes a duty to act with reasonable care in selecting or engaging a company to provide security services." 822 F.Supp at 544. The defendant's liability would therefore be based on the negligent hiring of its security company. *Id.*

8

services to the building located at 500 W. Madison, Chicago, Illinois. (Exhibit A, Count I, ¶ 9, Count II, ¶ 9).

In paragraph 16, in each count of the plaintiff's complaint against the ownership defendants, the plaintiff alleges that the ownership defendants: failed to provide adequate building security; or failed to timely alert the police; or failed to provide a safe and secure work environment; or failed to provide an adequate amount of security in the building; or failed to have or implement adequate procedures for recording when a person is denied access to the building; or failed to properly train security personnel; or improperly escorted Joseph Jackson to the 38th floor of the building; or failed to prevent Jackson from obtaining access to the 38th floor; or failed to prevent Jackson from shooting the plaintiff's decedent; or failed to physically restrain Jackson prior to the shooting of the plaintiff's decedent, or was otherwise negligent. (See plaintiff's complaint, attached hereto as Exhibit A and incorporated herein). It cannot be discerned from the Complaint how any of these actions could have prevented the criminal perpetrator, who was pointing a loaded gun at the security officer from gaining access to the elevators.

As described by the Supreme Court in *Pippin*, the duty owed to the plaintiff's decedent by the ownership defendants is limited by the extent of its undertaking. Here, as in *Pippin*, the ownership defendants owed the plaintiff's decedent a duty to use reasonable care to engage Allied Barton to provide security services at the property, and at most can be liable to the plaintiff for negligently hiring Allied Barton to provide these services. In the present case, plaintiff has not made any allegations against the ownership defendants that would put the ownership defendants on notice that plaintiff intends to pursue a negligent hiring claim. Nor are there any operative facts in plaintiff's complaint

9

upon which plaintiff could base a claim for the negligent hiring of Allied Barton by the ownership defendants. Additionally, plaintiff's complaint does not contain any allegations that resemble the allegations the Supreme Court approved in *Pippin*, i.e. that Allied Barton was hired without proper investigation and with negligence. Plaintiff's failure to adhere to the principles announced in *Pippin*, combined with plaintiff's failure to include operative facts upon which a claim for negligent hiring can be based, must lead to the dismissal of plaintiff's complaint for failure to state a claim upon which relief can be granted.

In *Cross v. Wells Fargo Alarm Services,* the holding of the Supreme Court in the *Pippin* case was distinguished. 82 Ill.2d 313; 412 N.E.2d 472 (1980). However, an examination of the facts in *Cross* indicates that the decision is distinguishable from both *Pippin* and the present case. In *Cross,* the plaintiff was the victim of a battery in the lobby of a building owned and managed by the Chicago Housing Authority, a defendant. *Id.* As in *Pippin*, the Chicago Housing Authority in *Cross* entered into a contract with a company to provide security services to its property, however, unlike *Pippin*, this contract was for <u>part time</u> security services. *Id.* (emphasis added). The Authority claimed that, pursuant to the security contract in place at the time of the plaintiff's injuries, its duty was limited to the extent of its undertaking, which led to the conclusion, as in *Pippin*, that the Authority could be held liable for nothing more than negligent hiring of the security company. *Id*. at 316. The Illinois Supreme Court disagreed, and stated "*Pippin* is not to be so narrowly read." *Id*. at 317. The Court reasoned that the factual circumstances in *Cross* differed from those in *Pippin,* in that the Authority voluntarily undertook to provide <u>part time</u> security to its property. *Id.* (emphasis added).

While the Authority's duty was limited by the extent of its undertaking, the authority's undertaking in *Cross* was substantially different from the undertaking by the defendant in *Pippin*. *Id.* "In providing that service (part time security), it (the Authority) was obligated to use reasonable care not to create increased dangers to persons lawfully on its property." *Id.* (clarification added). The plaintiff's complaint alleged that part time security significantly increased the amount of crimes that took place when the security was off duty, and these allegations were sufficient to allow the complaint to survive a motion to dismiss. *Id.*

It is clear that the Supreme Court's reasoning outlined above is inapplicable to the present case. The fundamental principle is the same in both *Pippin* and *Cross*, namely that the duty of a landlord is limited by the extent of the landlord's voluntary undertaking. However, the undertakings in each case are different. Unlike *Cross,* the ownership defendants in the case at bar did not contract to provide part time security nor are there allegations that the ownership defendants were aware of an increase in crime on their property due to their security agreement with Allied Barton (Exhibit A). Therefore, the reasoning applied by the Supreme Court in *Pippin*, a case with facts that are analogous to the case at bar, should be applied to the case at bar, and the plaintiff's complaint in the present case should be dismissed for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

As the *Kolodziejzak* Court stated, "even if we were to broaden the landlord's duty beyond that of reasonable care in hiring the security company, it would be difficult to find a duty that Simon Management undertook that it failed to fulfill." *Kolodziejzak v. Melvin Simon & Associates*, 292 Ill.App.3d 490, 496, 685 N.E.2d 985 (1st Dist. 1997).

11

Here, the complaint is completely devoid of any allegations that the "Ownership Defendants" undertook any duty other than to hire Allied BartonSecurity Services, LLC and that its security officers failed to prevent a criminal with a loaded gun from gaining access to the building. Absent any allegations that the "Ownership Defendants" voluntarily undertook some duty to prevent this unfortunate circumstance, Plaintiff's complaint fails to state a cause of action and must be dismissed pursuant to FRCP 12(b)(6).

C. **Plaintiff's Allegation Of Negligence Based On The Ownership Defendants' Failure To Notify The Police Prior To The Commission Of A Crime Are Contrary To Illinois Law.**

Here, the plaintiff's complaint alleges that each of the ownership defendants failed to timely alert the police of Joseph Jackson's presence in the building prior to the incident that led to the death of plaintiff's decedent. (Exhibit A, Counts II-VI, ¶ 16, subparagraph b).

The Illinois Supreme Court case of *Rowe v. State Bank of Lombard*, is instructive on the issue of a landlord's duty to notify the police prior to the commission of a crime on the landlord's property. 125 Ill.2d 203; 531 N.E.2d 1358 (1988). In *Rowe*, two tenants in an office park owned and managed by one of the defendants were violently assaulted by a third party who had improperly gained access to the property. *Id.* One of the plaintiffs' allegations against the property owner was based on the contention that the property owner had voluntarily assumed a duty to protect the plaintiffs from criminal acts due to the fact that an agent of the owner had responded to a call to investigate a suspicious person, made by a woman working at the office park, on the day that the plaintiffs were attacked. *Id.* at 219. Upon receiving this call, the agent for the owner went to the office park to investigate, found that the suspicious person complained of was no longer present, and checked the doors of the property to make sure that they were secure. *Id.*

12

With regard to whether the agent/owner owed the plaintiffs a duty to protect them from criminal acts on the property based on these actions, the Supreme Court stated that the agent "cannot be held to such a duty simply because he investigated whether an allegedly unauthorized individual was on the premises of the office park." *Id.* The court went on to state "While the plaintiffs claim that Fennessey (the agent) should have called the police and informed them of the possible trespasser, in view of the fact that the individual did not appear to be committing a crime or acting in a disturbing manner, Fennessey (the agent) was not remiss in not notifying the police. *Id.* (clarification added).

Here, the plaintiff's complaint alleges that each of the ownership defendants failed to timely alert the police of Joseph Jackson's presence in the building prior to the incident that led to the death of plaintiff's decedent. (Exhibit A, Counts II-VI, ¶ 16, subparagraph b). These allegations are inconsistent with the Illinois law stated above. There are no allegations in plaintiff's complaint which indicate that Jackson appeared to be committing a crime when he arrived at the building at 500 W. Madison, nor at any time until he forced the security officer to take him, at gunpoint, to the elevators. There are no allegations that the "Owner Defendants" had any knowledge of any criminal activity at that time. Thus, as explained by the Supreme Court in *Rowe*, the ownership defendants did not owe a duty to the plaintiff's decedent to notify the police of Jackson's presence in the building prior to the time that Jackson committed the criminal acts described in the complaint.

Therefore, pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations relating to the ownership defendants' failure to timely notify the police of Jackson's

presence in the building (Pl's Complaint at par. 16(b)), prior to the commission of the shooting of the plaintiff's decedent, must be dismissed for failure to state a claim.

## Conclusion

WHEREFORE, for all of the foregoing reasons, Defendants, UST-GEPT; GE ASSET MANAGEMENT, INC.; NACA LTD. PARTNERSHIP; NACA MADISON, LLC.; NACA REALTY CORPORATION; NACA LIMITED PARTNERSHIP; UST XV MADISON, LTD., and MB REAL ESTATE SERVICES, LLC., ("ownership defendants") pray that this Honorable Court dismiss Plaintiff's Complaint against them with prejudice and find that there exists no just reason to delay enforcement or appeal of this Order in accordance with FRCP 54(b).

Respectfully submitted,

JOHNSON & BELL, LTD.

By:_____
Robert M. Burke,

One of the Attorneys for Defendants, UST-GEPT JOINT VENTURE, L.P., GE ASSET MANAGEMENT, INC., NACA, LTD. PARTNERSHIP, NACA MADISON, LLC, NACA REALTY CORPORATION, UST XV MADISON, LTD., and MB REAL ESTATE SERVICES, L.L.C., and do hereby MB Real Estate Services, L.L.C.

ROBERT M. BURKE
JOHNSON & BELL, LTD.
Attorney for Defendants
33 West Monroe Street, Suite 2700
Chicago, Illinois 60603
Telephone: (312) 372-0770
Attorney No.: 06347