**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **SUZANNE E. MALEC MCKENNA**, as Executor and Personal Representative of the Estate of **MICHAEL R. MALEC MCKENNA,** deceased | ) ) ) ) ) | |
| Plaintiffs, | ) ) | 07 CV 82 Judge St. Eve |
| -vs- | ) ) | Magistrate Judge Keys |
| **ALLIEDBARTON SECURITY SERVICES, SERVICES, LLC** *et. al.* | ) ) ) ) | consolidated with 07 CV 83 and 07 CV 84 |
| Defendants. | ) ) | |

**RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AND MOTION TO
REMAND, AND REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS**

**NOW COME** Defendants, **UST-GEPT; GE ASSET MANAGEMENT, INC.; NACA LTD. PARTNERSHIP; NACA MADISON, LLC.; NACA REALTY CORPORATION; UST XV MADISON, LTD.**, and **MB REAL ESTATE SERVICES, LLC.**, (sometimes collectively referenced hereinafter as "NACA Defendants") by and through one of their attorneys, ROBERT M. BURKE of JOHNSON AND BELL, LTD., and for their response to Plaintiffs' Motion for Leave to File their Amended Complaints and to Remand this action to state court, and for their Brief in further Support of their 12(B)(6) Motion to Dismiss, state the following:

**INTRODUCTION**

On December 8, 2006, Joseph Jackson ("Jackson") forced his way into a downtown office tower at the point of a gun, shot and killed three people, and injured a fourth person. Jackson was then shot and killed by the police. Three weeks after the incident, on December 29, Plaintiffs sued the purported owners of the building, the building manager, and the building security firm in Illinois state court. Notably, Plaintiffs chose not to join the Special Administrator of the Estate of Joseph Jackson as a Defendant. On January 5, 2007, Defendant Allied Barton Security Services ("Allied Barton"), the company providing security

services at the premises removed this action to federal court based on diversity jurisdiction between the Illinois Plaintiffs and the out-of-state Defendants.

On January 22, 2007, the NACA Defendants filed a Motion to Dismiss, arguing that, under the controlling Illinois law, they did not owe a duty to Plaintiffs to prevent Jackson, an armed assailant, from criminally gaining entry to the premises by pointing a loaded gun at a security guard or from committing further violent criminal acts on the premises. As more fully set forth in the NACA Defendants Memorandum of Law in Support of their Motion to Dismiss, Illinois law does not impose a duty on a landlord or landowner to prevent the criminal acts of a third party except in very narrow circumstances, which do not apply here.[1]

After obtaining leave of Court, Allied Barton added the Estate of Joseph Jackson as a third party Defendant to this action on February 26, 2007, which will ensure that the finder of fact has an opportunity to assess blame against Jackson. Only after the Special Administrator of Jackson's Estate was already added to this litigation as a third party Defendant, did Plaintiffs seek leave to file their Amended Complaints, which also sought to add the Special Administrator of Jackson's Estate as an additional party Defendant.[2]

This Court should deny Plaintiffs' Motion for Leave to Amend their Complaints and their Motion to Remand, and should dismiss Plaintiffs' actions against the NACA Defendants, for at least two reasons. First, this Court has discretion to deny a motion for leave to amend where, as here, the Plaintiff seeks to add a non-diverse party following removal of the action to federal court. Courts have repeatedly held that an attempt to add a non-diverse party after removal, where no new facts have been discovered since the complaint was initially filed, should be carefully scrutinized. (See Section I below). The Plaintiffs plainly knew that Jackson was responsible for the shootings, yet

---

[1] Each of the Plaintiffs is an alleged employee of a tenant of the building (see ¶21 of each proposed Amended Complaint). Illinois Courts have repeatedly held that the relationship between a landlord and a tenant or a landlord and those on the premises with the tenant's consent is not a special relationship which imposes a duty to protect against the criminal acts of a third party. *Rowe v. State Bank of Lombard*, 125 Ill.2d 203, 531 N.E.2d 1358, 1364(1988); *B.C. v. J.C. Penney Company, Inc.*, 205 Ill.App.3d 5, 8, 562 N.E.2d 533, 536 (1st Dist. 1990).

[2] In their motion to Remand, Plaintiffs assert that this action should be remanded because Jackson was an Illinois resident. There is no reference to the citizenship of the proposed new Defendant.

decided not to join his estate as a party defendant in the lawsuits. They should not be permitted to add him now for the sole purpose of defeating diversity jurisdiction. Second, despite the addition of new allegations against the NACA Defendants, Plaintiffs still have not stated a claim upon which relief may be granted. (See Section II below).

The allegations set forth in the proposed Amended Complaint clearly fail to allege a basis for this Court to find that the NACA Defendants owed a duty to prevent the intentional, criminal and violent attacks by Jackson involved here. Therefore, this Court should deny Plaintiffs' Motions for Leave to Amend and to Remand, and should grant the NACA Defendants' Motion to Dismiss.

I.    **Plaintiffs' Attempt to Now Amend the Complaint to Add the Estate of Joseph Jackson as a Party Defendant Should be Denied.**

Although Federal Rule of Civil Procedure 15 ordinarily governs the amendment of pleadings, there is a specific statute addressing whether Plaintiffs should be permitted to amend their complaint to add a non-diverse Defendant after a case has been removed.

Specifically, 28 U.S.C. §1447(e) provides that:

> If after removal the Plaintiff seeks to join additional Defendants whose joinder would destroy subject matter jurisdiction, the Court may deny joinder, or permit joinder and remand the action to the state Court.

28 U.S.C. §1447(e).

Courts have identified four factors relevant to whether a Plaintiff should be granted leave to amend a Complaint in order to join a non-diverse Defendant after removal:  (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, (2) whether the Plaintiff has been dilatory in asking for an amendment, (3) whether the Plaintiff, or other parties, will be prejudiced by allowing or denying the motion for leave to amend, and (4) any other equitable considerations, including Defendants' interest in maintaining a federal forum. See *Bostrom v. Target Corp.*, 2006 U.S. Dist. Lexis 84890, *5 (N.D. Ill. 2006) (attached at Exhibit "A").

In *Mays v. Rapaport*, 198 F.3d 457, 462 (4th Cir. 1999), the Court identified the same four factors to be considered in deciding whether to allow a motion for leave to amend under 28 U.S.C. §1447(e). Although the Fourth Circuit in *Mays* ultimately addressed the District Court's fraudulent joinder analysis, the decision is pertinent to the instant analysis in that the Court noted:

> We emphasize that the district court **was correct to carefully scrutinize Mayes' attempt to add a non diverse defendant after removal**. Especially where, as here, a Plaintiff seeks to add a non diverse defendant immediately after removal but **before any additional discovery has taken place**, the District Court should be wary that the amendment sought is for the specific purpose of avoiding federal jurisdiction... Careful scrutiny of attempts at post-removal, non diverse joinder protects the diverse Defendant's interest in keeping the action in Federal Court.

*Mayes v. Rapoport* 198 F.3d at 463 (emphasis added).

The instant motion for leave to amend should be denied because it is apparent that its sole purpose is to destroy diversity jurisdiction. *See Bostrom*, 2006 U.S. Dist. Lexis 84890 at *5 (Aspen, J.) (denying motion to add a non-diverse Defendant after removal because the Plaintiff had no compelling basis to add the non-diverse Defendant other than to destroy diversity); *Bridgestone/Firestone, Inc. v. Ford Motor Co.*, 129 F.Supp.2d 1202, 1206-07 (S.D. Ind. 2001) (denying motion to add non-diverse Defendant because "Plaintiff's **lack of explanation** for failing to include [non-diverse Defendant] in the original complaint when the identity of the [non-diverse Defendant] must have been known to her is fatal to her claim")(emphasis added); *Land v. Yamaha Motor Corp.*, 2000 U.S. Dist. Lexis 20117, *6-8 (S.D. Ind. December 20, 2000) (attached at Exhibit "B") (denying motion to add non-diverse Defendant because "the only objectively apparent motivation for Plaintiffs to have added the non-diverse Defendants in this case was to defeat federal jurisdiction"); *Roberts v. Standard Insurance Co.*, 2004 U.S. Dist. Lexis 20797, *26 (N.D. Ill. 2004)(denying Plaintiff's motion to add non-diverse defendant on grounds of both fraudulent joinder, *i.e.*, that the amendment would be futile, **and** because of the equitable factors the Courts are to consider in deciding whether to grant an amendment which would defeat diversity jurisdiction subsequent to removal.)

In *Bostrom*, the Plaintiff was injured in a Target store, and sued Target in Illinois state court. Target then removed the action to the Northern District of Illinois on the basis of diversity jurisdiction between the Illinois Plaintiff and Target, an out-of-state corporation. Following removal, Plaintiff sought to add the Target store manager as a Defendant, and moved to remand the case because the store manager was a non-diverse Illinois resident. Judge Aspen denied the motion to amend because the relevant factors weighed against allowing the amendment. First, because he did not have any other persuasive basis for doing so, it was apparent that Plaintiff sought to add the non-diverse Defendant solely in order to destroy diversity. Second, there was no credible reason for the delay in naming the non-diverse Defendant because Plaintiff learned no new information about the store manager's role in the relevant incident after initially filing the action without naming him. Third, the Plaintiff could not identify any equitable reason to deprive the out-of-state Defendant of its right to have the case decided in federal court.

Here, as in *Bostrom*, the relevant factors weigh heavily against allowing Plaintiffs to add Jackson as a Defendant. The first factor weighs against the amendment because it is clear that the only purpose behind Plaintiffs' attempt to add the Special Administrator of Jackson's Estate is to defeat federal jurisdiction. "Courts place particular emphasis on the first factor, which addresses the Plaintiff's motive for seeking the amendment." *Bridgestone/Firestone*, 129 F.Supp.2d at 1207, citing *Connelly v. General Motors Corp.*, 1986 WL 14140, at *2 (N.D. Ill. Dec. 8, 1986) (attached at Exhibit "C"). In moving for leave to file their amended complaints, Plaintiffs have not identified any purported reason for now adding the Special Administrator of Jackson's Estate as a Defendant. Despite their silence, the Plaintiff's motivation could not be any clearer. Jackson's estate is likely to be judgment proof. He is deceased, and no estate has been opened by his heirs, indicating that he had no substantial assets. To ensure that a jury will have a chance to assess blame against Jackson, Allied Barton has already added the Special Administrator of Jackson's Estate as a third party Defendant, an act which does not destroy diversity. See, *e.g.*, *Lorance v. Marion Power Shovel Co., Inc.*, 520 F.2d 737, 738 (7th Cir. 1975); *Corlew v. Denny's Restaurant, Inc.*, 983

F.Supp. 878, 879 (E.D. Mo. 1997). Therefore, the only possible basis for Plaintiffs to add the Special Administrator of Jackson's Estate as a primary Defendant at this point would be to destroy diversity and have this case remanded to state court. The first factor, therefore, overwhelmingly supports denial of the Motion for Leave to File the proposed Amended Complaint.

The second factor also weighs against allowing the amendment because the Plaintiffs have been dilatory in asking for an amendment. "When a Plaintiff was aware at the time of the filing of her original complaint of the identity of the Defendants she now seeks to add, there arises some suspicion of Plaintiff's motives to amend." *Bostrom*, 2006 U.S. Dist. Lexis 84890 at *10, quoting *Bridgestone/Firestone*, 129 F.Supp.2d at 1205.

Here, the timing of the Plaintiffs' motion to amend does more than create suspicion regarding their motives. The fact that Plaintiffs filed their state court actions without naming the Special Administrator of Jackson's Estate, even though they clearly knew that Jackson was responsible for the shootings, establishes that Plaintiffs' only motivation to now add the Special Administrator of Jackson's Estate, without there having been any discovery, is to defeat federal jurisdiction. (*See* Plaintiffs original Complaints.) The lawsuits were removed to federal court on January 5, 2007, only seven days after they were initially filed. However, Plaintiffs did not seek to amend at that time. Rather, as Plaintiffs' initial pleadings demonstrate, Plaintiffs made a conscious decision not to name the Special Administrator of Jackson's Estate as a Defendant on December 29, 2006 or in the several months after removal because they had no desire to allocate fault toward anyone other than the named Defendants.

In the almost three months since Plaintiffs filed their actions against the original Defendants, no new facts have come to light regarding Jackson's role in the shooting or his ability to pay a judgment. Indeed, Plaintiffs have set forth no such facts in their motion for leave to amend and have pled no new facts in the proposed Amended Complaint regarding Jackson's role or his ability to pay a judgment. Likewise, Plaintiffs have not initiated any discovery from any of the Defendants regarding Jackson's role, which was well publicized in the news media and well known to Plaintiffs as evidenced by the detailed allegations of the original complaints. The only difference in circumstances since the original

complaints were filed is that the Defendants have spent considerable resources to have the matter properly removed to federal court, Allied Barton has filed its answer, Allied Barton has added the Special Administrator of Jackson's Estate as a Third-Party Defendant, and the NACA Defendants have filed their motion to dismiss. Only then, when this Court would have an opportunity to dismiss the case against the NACA Defendants, did Plaintiffs decide to seek leave to add the Special Administrator of Jackson's Estate. It is apparent that there is no legitimate basis for Plaintiffs' delay in attempting to add the Special Administrator of Jackson's Estate as a Defendant. The second factor therefore weighs in favor of denying the motion for leave to amend.

The third and fourth factors also weigh against the motion to amend because the Plaintiffs will not be prejudiced if their motion to amend is denied, while the Defendants will be substantially prejudiced by losing their right to have the case heard in federal court. Plaintiffs have not, and cannot, establish any prejudice from the continued exclusion of the Special Administrator of Jackson's Estate as a primary Defendant. Indeed, the allegations of the initial Complaints make it apparent that Plaintiffs well knew of Jackson's involvement in the shootings prior to filing their Complaints, and consciously elected to omit him as a party Defendant with the intention of trying to blame others for the shootings. As described more fully above, the only apparent basis for this change of strategy shortly after removal is to deny Defendants their chosen forum.

In contrast, the Defendants will be prejudiced if the motion to amend is granted. The Defendants are foreign companies subject to potential bias in state court. *See Bostrom*, 2006 U.S. Dist. Lexis 84890 at *12. Defendants in federal court by way of diversity jurisdiction, therefore, "have a significant interest in proceeding in a federal instead of an out of state forum." *See Bridgestone/Firestone*, 129 F.Supp.2d at 1206-07, quoting *Hart v. Dow Chemical*, 1997 U.S. Dist. Lexis 15685, at *6 (N.D. Ill. Sept. 30, 1997) (attached at Exhibit "D"). Defendants should not be denied their right to proceed in federal court.

Based on the factors relevant under Section 1447, Plaintiffs' Motion for Leave to Amend their Complaints to add the Special Administrator of Jackson's Estate as a party Defendant, and their Motion to Remand, should be denied.

**II.** **Plaintiffs' Motion Should Also Be Denied Because Plaintiffs' Complaints Do Not State A Claim Upon Which Relief May Be Granted Against the NACA Defendants.**

Where a proposed Amended Complaint fails to cure the deficiencies in the original pleading, or could not survive a second Motion to Dismiss, the Court should deny a motion to amend the complaint. *Crestview Village Apartments v. U.S. Dept. of Housing and Urban Development*, 383 F.3d 552, 558 (7th Cir. 2004); *Perkins v. Silverstein*, 939 F.2d 463, 472 (7th Cir. 1991).

The proposed Amended Complaints here fail to state a cause of action under Illinois law for the same reasons as did the original Complaints. (*See* NACA Defendants Motion to Dismiss.) Specifically, Plaintiffs still have failed to adequately allege that the NACA Defendants owed a duty to prevent Jackson, an armed gunman, from forcing his way into the premises and intentionally committing murder and aggravated battery. Each of the proposed Amended Complaints is identical to the original Complaints, except that each seeks to name the Special Administrator of Jackson's Estate as a party Defendant, and contains certain additional allegations in paragraphs 10 through 23. However, none of those additional allegations have any relevance to determining whether the NACA Defendants owed a duty to the Plaintiffs. The allegations in the proposed Amended Complaint, which purportedly give rise to a duty as to the NACA Defendants, remain identical to the allegations of the original Complaints. (Compare Hoover and McKenna Complaints, ¶ 15 of Counts III – XII, with Proposed Amended Complaint, ¶ 30 of Counts III – XII; also compare Lieb Complaint, ¶ 15 of Counts II – VI with Proposed Amended Complaint, ¶ 30 of Counts II – VI.) Likewise, the allegations as to the negligent conduct of the NACA Defendants remains identical in the proposed Amended Complaints to that contained in the original Complaints. (Compare Hoover and McKenna Complaints, ¶ 16 and subparagraphs 16a – 16k of Counts III – XII, with Proposed Amended Complaint, ¶ 31 and subparagraphs 31a – 31k of Counts III – XII; also compare Lieb Complaint, ¶16 and subparagraphs 16a – 16k of

Counts II – VI with Proposed Amended Complaint, ¶ 31 and subparagraphs 31a – 31k of Counts II – VI.)

The new allegations simply do not give rise to a duty to protect Plaintiffs from the intentional criminal acts of a third party. Plaintiffs have suggested that the moving Defendants had procedures requiring visitors to check in before entering the building, but those procedures do not give rise to a duty to prevent an armed assailant from gaining entry to the building at gunpoint. (*See* proposed Amended Complaints at ¶ ¶10 – 16.) Moreover, the unfounded and generic allegation that the moving Defendants somehow were responsible for maintaining all systems of entry to tenant space within the building, and the allegation that the tenant space where the shooting occurred had a broken lock at one of the entrances to their suite's space, does not give rise to a duty to prevent an armed gunmen from forcing his way at gunpoint into an office suite to shoot people. (*See* proposed Amended Complaints, ¶ 17 - 22.) There is no indication whatsoever in the proposed Amended Complaints that Jackson gained entry to the tenant space where the incident occurred because of a purportedly broken lock or even that he gained entry at the entrance where the lock was purportedly broken. (*See* proposed Amended Complaints).

It is well-settled that "Illinois does not impose a duty to protect others from criminal attacks by third persons . . . [except] where the criminal attack is reasonably foreseeable and the parties had a special relationship." *Morgan v. 253 East Delaware Condominium Association*, 231 Ill.App.3d 208, 212, 595 N.E.2d 36 (1ˢᵗ Dist. 1992). The landlord-tenant relationship is not the sort of "special relationship" giving rise to a duty to protect tenants against the criminal acts of third-parties. *Id.* at 211, 38. *See also, Pippin* at 210, 598; *Roe v. State Bank of Lombard*, 125 Ill.2d 203, 215, 531 N.E.2d 1358, 1364 (1988). However, where a landlord "assumes a duty to protect tenants against some criminal acts of third parties, its duty is limited by the extent of the undertaking, and the injuries sustained must be reasonably foreseeable." *Morgan*, 231 Ill.App.3d at 211-12, 595 N.E.2d at 39.

Here, the NACA Defendants are not liable for the criminal acts of Jackson for at least two reasons. First, the NACA Defendants never undertook to protect tenants from the intentional and violent acts of a gunman. The

Illinois Appellate Court considered a similar case in *Morgan*, 231 Ill.App.3d at 208, 595 N.E.2d at 36. In *Morgan*, Plaintiff was assaulted, beaten, and robbed by a visitor to her building. She initiated an action against the landlord, alleging that the landlord had a duty to prevent criminal acts from being committed against tenants because they had hired a doorman to stop visitors to make sure that a tenant had authorized their entry. The Defendant filed a motion for summary judgment, alleging that it did not have a duty to protect tenants against criminal activity. The trial court granted the motion, and the appellate court affirmed, holding that the landlord owed no legal duty to protect tenants from the criminal acts of a third party. The appellate court explained that the landlord's duty was limited to the extent of its undertaking, which was screening guests without an armed security force, and that the duty did not include becoming an absolute insurer against harm to tenants due to criminal acts of third parties.

Like *Morgan*, the NACA Defendants did not undertake and it is not alleged that they undertook any duty to protect the Plaintiffs against the criminal acts of armed gunmen. The allegations here, like in *Morgan*, are that the Defendants had undertaken a screening process to ensure that visitors were authorized to enter the building. (*See* proposed Amended Complaints, ¶ ¶10 - 16.) However, there are no allegations here nor is there any basis to allege that an armed security force or police force had been retained to stop armed gunmen from forcing their way into the building. It would, therefore, be contrary to Illinois law to expand a Defendant's duty from providing a screening service to an absolute duty to prevent armed gunmen from forcing their way into the premises. *Id.* at 208, 36. *See also Pippin v. Chicago Housing Authority*, 78 Ill.2d 204; 399 N.E.2d 596 (1979) wherein the Illinois Supreme Court explained that the imposition of a duty under the voluntary undertaking rule will be limited to the extent of the duty undertaken).

Since armed security guards were not retained and since a specially trained tactical force to deal with armed criminals was not employed to respond to armed gunmen, the duty which this Court may impose on the NACA Defendants is a duty to screen visitors. As the allegations of the proposed Amended Complaints (¶24) establish, the screening process **was employed** and

resulted in Jackson being denied entry to the office tower. It was only when he returned and threatened the life of the security officer that "an employee and/or agent of ALLIEDBARTON" took Joseph Jackson to the 38th floor where the shootings took place. (See proposed Amended Complaints at ¶26). There are no allegations that the screening process failed or led to Joseph Jackson's gaining entrance to the office tower. All that is alleged is that after he was denied entry, because of the screening process, "Joseph Jackson was taken to the 38th floor of the 500 West Madison Street building" where the shootings took place. (See proposed Amended Complaints at ¶26). Plaintiffs should not be allowed, under the guise of notice pleading, to disingenuously omit key allegations of operative facts which would necessarily establish that the NACA Defendants owed no duty to prevent the criminal acts here involved. The operative facts, which have been pled, fail to establish a basis to impose a duty, and therefore, Plaintiffs proposed Amended Complaints fails to state a cause of action. For those reasons, the motion for leave to amend should be denied.

Second, it was not reasonably foreseeable to the NACA Defendants that an armed gunman would enter the building and shoot four people. Under Illinois law, Defendants are not liable for the intentional criminal acts of a third party where there is a mere possibility of such a criminal act: "It is only when [criminal acts by third parties] are reasonably foreseeable, and the burden of preventing such attacks can reasonably be placed upon the Defendant, that a duty arises to protect an invitee from criminal attack." *Burks v. Madyun*, 105 Ill.App.3d 917, 921, 435 N.E.2d 185, 189, (1st Dist. 1982) Therefore, under Illinois law, "absent knowledge of previous incidents or special circumstances which would charge the owner with knowledge of the danger and the duty to anticipate it, the common law duty of reasonable care owed to a person lawfully on the premises cannot be extended to a duty to guard against the criminal attacks of third persons." *Id.*

When determining whether a duty exists in a particular action, the Court should take into account the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on Defendant. *Ward v. K-Mart*, 136 Ill.2d 32, 140, 554 N.E.2d 223, 226 (1990). A crucial consideration in this analysis is whether similar, criminal acts have

previously occurred. *Burks*, 105 Ill. App. 3d at 921, 435 N.E.2d at 189. Absent knowledge of **previous incidents** or **special circumstances**, which would charge the owner with knowledge of the danger and the duty to anticipate it, the common law duty of reasonable care owed to persons lawfully on the premises cannot be extended to a duty to guard against the criminal acts of third persons. *Burks*, 105 Ill.App.3d at 921, 435 N.E.2d at 189 (holding that Defendant did not have a duty to protect Plaintiff from criminal acts of third parties, even after the Defendant had learned of threats of criminal acts, because Plaintiff failed to allege that criminals were known to be present on the premises or that prior, similar criminal acts had occurred).

Plaintiffs have not alleged any prior incidents or special circumstances that would charge the NACA Defendants with knowledge of any danger that an armed gunman would force his way into the premises to commit murder. There are no alleged prior, similar occurrences which would give rise to any duty to anticipate the violent criminal act here involved. (*See* the proposed Amended Complaints). In *Kolodziejzak v. Melvin Simon & Associates*, 292 Ill.App.3d 490, 685 N.E.2d 985 (1st Dist. 1997), the Court recognized that even if the occurrence of a violent crime by a gang member was foreseeable and even though other crimes had been perpetrated on the premises, more was required before a duty to prevent the criminal attack there involved could be imposed. Likewise, in *Sameer v. Butt*, 343 Ill.App.3d 78, 796 N.E.2d 1063 (1st Dist. 2003), the Court held that while anyone can foresee a crime virtually anywhere at any time, there must be some prior incident of criminal violence or some other reason to reasonably anticipate the criminal conduct before a duty will be imposed. *Sameer,* 343 Ill.App.3d at 86 - 87, 796 N.E.2d at 1069.

Additionally, Plaintiffs have failed to allege facts sufficient for this Court to impose a duty under the "special circumstances" exception to the general rule that a landlord owes no duty to protect a tenant or those on its premises with its consent from the criminal acts of third parties. An examination of the pertinent decisions indicates that the "special circumstances" exception in *Burks* has been narrowly applied to those situations where the landlord has failed to properly maintain the building and its environs in such a way as to promote and allow the specific unwarranted entry to the building. See

*Duncavagh v. Allen*, 147 Ill.App.3d 88, 497 N.E.2d 433 (1st Dist. 1986) (concluding that Plaintiff stated a claim for negligence and wrongful death where intruder took advantage of inoperable lights, overgrown weeds, and a ladder that had been previously used to burglarize the same apartment through the same broken window, to enter the tenant's apartment); *Rowe v. State Bank of Lombard*, 125 Ill.2d 203, 531 N.E.2d 1358 (1988) (concluding there was a factual issue as to whether intruder entered building using a missing key that Defendant failed to properly secure); *Shea v. Preservation Chicago, Inc.*, 206 Ill.App.3d 657, 565 N.E.2d 20 (1st Dist. 1990) (holding that tenant stated a claim for negligence where landlord failed to repair an internal security door and safety lock that an intruder used to enter the building). In each of these cases, the Court imposed a duty to prevent the criminal act of a third person who obtained entry to the building because the landlord failed to properly repair or maintain the premises. Because Plaintiffs have made no allegation here that Jackson entered the building or the tenant's suite *as a result of* the NACA Defendants' failure to repair or maintain the premises (*see* the proposed Amended Complaints), the NACA Defendants owed no duty as a matter of law to protect Plaintiffs from the criminal acts of an armed gunmen. As Plaintiffs' Complaints and the proposed Amended Complaints fail to state a cause of action, Plaintiffs' causes of action against the NACA Defendants should be dismissed.

## **CONCLUSION**

**WHEREFORE**, for all of the foregoing reasons, Defendants, **UST-GEPT; GE ASSET MANAGEMENT, INC.; NACA LTD. PARTNERSHIP; NACA MADISON, LLC.; NACA REALTY CORPORATION; UST XV MADISON, LTD.**, and **MB REAL ESTATE SERVICES, LLC.**, pray that this Honorable Court deny Plaintiffs' Motion for Leave to File their Amended Complaints. As Plaintiffs' motion to amend the complaints to add the Estate of Jackson as a Defendant should be denied, there is no basis to remand this action to state court. The NACA Defendants further pray that this Honorable Court grant Defendants' Rule 12(B)(6) Motion to Dismiss and dismiss this action against the NACA Defendants with prejudice.

Respectfully submitted,

JOHNSON & BELL, LTD.


/s/Robert M. Burke,

    One of the Attorneys for Defendants**,** UST-GEPT JOINT VENTURE, L.P., GE ASSET MANAGEMENT, INC., NACA, LTD. PARTNERSHIP, NACA MADISON, LLC, NACA REALTY CORPORATION, UST XV MADISON, LTD., and MB REAL ESTATE SERVICES, L.L.C.

ROBERT M. BURKE
JOHNSON & BELL, LTD.
Attorney for Defendants
33 West Monroe Street, Suite 2700
Chicago, Illinois 60603
Telephone:  (312) 372-0770
Attorney No.: 06347