## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| SUZANNE E. MALEC MCKENNA, as Executor and Personal Representative of the Estate of MICHAEL R. MALEC MCKENNA, deceased, <br><br> Plaintiff, <br><br> v. <br><br> ALLIED BARTON SECURITY SERVICES, LLC, a/k/a ALLIED BARTON SECURITY SERVICES, UST-GEPT, a Joint Venture, GE ASSET MANAGEMENT, INC., NACA LTD PARTNERSHIP, NACA MADISON, LLC, NACA REALTY CORP., NACA Limited Partnership, an affiliate of General Electric Pension Trust, UST XV MADISON, LTD., and affiliate of Estein & Ass., MB REAL ESTATE SERVICES, LLC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> 07 CV 82 <br> Judge St. Eve <br> Magistrate Judge Keys |

## PLAINTIFFS' REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE AMENDED COMPLAINT and MOTION TO REMAND, AND RESPONSE IN FURTHER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

STATEMENT OF FACTS ............................................................................ 2

ARGUMENT ............................................................................................... 4

I.  THIS COURT SHOULD GRANT PLAINTIFFS' MOTIONS FOR LEAVE TO
    FILE AN AMENDED COMPLAINT ADDING AS A DEFENDANT, THE
    JACKSON ESTATE. ............................................................................. 4

    A.  Plaintiffs' Motive in Seeking Leave to Amend Is Not to Destroy Diversity
        Jurisdiction ................................................................................... 6

    B.  Plaintiffs' Timely Filed Their Motion for Leave to Amend Shortly after
        Allied Barton Added the Jackson Estate in a Third-Party Complaint ....... 8

    C.  This Court Will Severely Prejudice Plaintiffs if it Refuses to Honor Their
        Request of Adding the Jackson Estate as a Defendant .............................. 9

II. THIS COURT SHOULD DENY NACA DEFENDANTS' MOTION TO
    DISMISS .............................................................................................. 11

    A.  Standard of Review ............................................................................... 11

    B.  The NACA Defendants Owed the Plaintiffs a Duty to Protect Them from
        the Criminal Acts of a Third Party When it Failed to Exercise Due Care in
        the Maintenance of the Building ............................................................ 11

        i.   Plaintiffs' Amended Complaints Allege Negligent Maintenance of
             a Defective Security Door Which Allowed Joseph Jackson Access
             to the Office Where Plaintiffs' Decedents and Plaintiff, Ruth Zak
             Leib Worked ............................................................................ 12

        ii.  The Allegations in Plaintiffs' First Amended Complaint Support a
             Finding that the NACA Defendants Voluntarily Assumed a Duty
             to Prevent the Criminal Attacks Here Involved ............................ 16

        iii. NACA Defendants Misapprehend the Holding of *Rowe* ............. 18

CONCLUSION ............................................................................................ 20

## TABLE OF AUTHORITIES

## I.    CASES

*Jass v. Prudential Health Care Plain, Inc.*, 88 F.3d 1482 (7th Cir. 1997) ........................ 5

*Campbell v. Ingersoll Milling Mach. Co.*, 893 F. 2d 925 (7th Cir. 1990) *cert. denied*, 498 U.S. 844 (1990) .................................................................................................................... 5

*Perez v. Arcobaleno Pasta Machines, Inc.*, 261 F.Supp.2d 997 (N.D. Ill. 2003) .......... 5, 9

*County of Cook v. Philip Morris, Inc*, 1997 WL 667777 (N.D. Ill. 1997) ........................ 6

*Bostrom v. Target Corp.* 2006 WL 3370176, (N.D. Ill. 2006) ...................................... 6,7

*Bridgestone/Firestone Inc, ATX, ATX2, v. Ford Motor Co.,* 129 F.Supp.2d 1202 (S.D. Ind. 2001) .......................................................................................................................... 6, 7

*Witkowski v. Toyota Indus. Equipment, Div. of Toyota Motor Sales* , 1992 WL 159267 (N.D. Ill. 1992) .................................................................................................................... 9

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993)Id 11

*Arazie v. Mullane*, 2 F.3d 1456, 1465 (7th Cir. 1993) .................................................... 11

*Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) ................................................................ 11

*Rowe v. State Bank of Lombard*, 125 Ill.2d 203; 531 N.E.3d 1358 (1988) ... 11, 14, 15-16

*Drewisk v. Interstate Terminals, Inc.*, 42 Ill.2d 345; 247 N.E.2d 877 (1969) ................ 12

*Shea v. Preservation Chicago, Inc.*, 206 Ill. App. 3d 657; 565 N.E.2d 20 (1st Dist. 1991) . ................................................................................................................................. 12, 13

*Isaacs v. Huntington Memorial Hosp.*, 38 Cal. 3d 112(1985) ........................................ 12

*Mims v. New York Life Ins.*,133 Ill. App. 283; 273 N.E.2d 186 (1st Dist. 1971) ............ 13

*Kolodziejzak v. Melvin Simon & Associates*, 292 Ill. App. 3d 490; 685 N.E. 2d 985 (1st Dist. 1997) ........................................................................................................................ 14

*Lance v. Senior,* 36 Ill.2d 516; 224 N.E.2d 231 (1967) .................................................. 15

*People v. Bales*, 108 Ill.2d 182, 194; 483 N.E.2d 517 (1985) ........................................ 15

*Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69; 199 N.E.2d 769 (1964) ........................ 16

*Pippen v Chicago Housing Authority*, 78 Ill. 2d 204; 399 N.E.2d 596 (1979) ................ 16

*Morgan v. East Delaware Condominium Association*, 231 Ill. App. 3d 208; 595 N.E.2d 36 (1st Dist. 1992) ........................................................................................................... 16

## II.    STATUTES, RULES AND REGULATIONS

28 U.S.C. 1332(c)(2) ........................................................................................................ 3

28 U.S.C. §1447(e) .......................................................................................................... 4

28 U.S.C. § 1332 .............................................................................................................. 8

**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SUZANNE E. MALEC MCKENNA, as | ) | |
| Executor and Personal Representative | ) | |
| of the Estate of MICHAEL R. MALEC | ) | |
| MCKENNA, deceased, | ) | |
| | ) | |
| Plaintiff, | ) | 07 CV 82 |
| | ) | Judge St. Eve |
| v. | ) | Magistrate Judge Keys |
| | ) | |
| ALLIED BARTON SECURITY SERVICES, LLC, | ) | |
| a/k/a ALLIED BARTON SECURITY SERVICES, | ) | |
| UST-GEPT, a Joint Venture, GE ASSET | ) | |
| MANAGEMENT, INC., NACA LTD PARTNERSHIP, | ) | |
| NACA MADISON, LLC, NACA REALTY | ) | |
| CORP., NACA Limited Partnership, an affiliate of | ) | |
| General Electric Pension Trust, UST XV MADISON, | ) | |
| LTD., and affiliate of Estein & Ass., MB REAL ESTATE | ) | |
| SERVICES, LLC., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE
AMENDED COMPLAINT and MOTION TO REMAND, AND RESPONSE IN
FURTHER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

NOW COME Plaintiff, SUZANNE E. MALEC MCKENNA, as Executor and Personal

Representative of the Estate of MICHAEL R. MALEC MCKENNA, deceased; LOUISE

HOOVER, as Executor of the Estate of ALLEN J. HOOVER, deceased; and RUTH ZAK LEIB

by and through their attorneys POWER, ROGERS, & SMITH, P.C., and move this Honorable

Court to grant their Motion for Leave to file an Amended Complaint and Motion to Remand to

State Court and deny Defendants', MB Real Estate Services, LLC.; GE Asset Management;

NACA Ltd. Partnership; NACA Madison, LLC; NACA Realty Corp, (hereinafter referred to as

1

"NACA Defendants") Motion to Dismiss. In support thereof, Plaintiffs state as follows[1]:

## STATEMENT OF FACTS

The Plaintiffs' claim stem from the fatal shooting of MICHAEL R. MALEC McKENNA;

ALLEN J. HOOVER, and shooting of RUTH ZAK LEIB (hereinafter collectively referred to as

"Plaintiffs")while at their place of employment located at 500 W. Madison Street, in the City of

Chicago, State of Illinois. On December 8, 2006, while Plaintiffs were working at the law firm

of Woods, Philips, Katz and & Clark (hereinafter "Woods Office"), Joseph Jackson was escorted

by security to the 38th floor of the 500 West Madison Building where he shot and killed three

people including, Plaintiff's decedents, Allen J. Hoover and Michael Malec McKenna, and

injured Plaintiff, Ruth Zak Leib.

On December 8, 2006, Joseph Jackson was originally denied access from the premises in

question when he asked to see an attorney that worked on the 38th floor. Allegedly, Joseph

Jackson then went to the loading dock of the building at 500 W. Madison where he was able to

gain access to the upper floors of the office building. Joseph Jackson was then taken to the 38th

floor by an employee of ALLIED BARTON SECURITY SERVICES (hereinafter "ALLIED

BARTON") and/or the owners of the building. After reaching the 38th floor, Joseph Jackson

gained access to the Woods Office. Joseph Jackson proceeded to open fire on innocent

employees of the Woods Office where he shot and killed three people, including the Plaintiffs

---

[1]Plaintiffs respectfully object to NACA Defendants' filing a Motion to Dismiss pertaining to First Amended Complaint at Law which Plaintiffs have not yet been granted leave to file. The issue is not ripe because NACA Defendants are objecting to Plaintiffs' Motion for leave to file the amended complaint. Respectfully, until the Court rules on the Motion for Leave to file the amended complaint, this court should not entertain NACA Defendants' Motion to Dismiss. After deciding the issue of Plaintiffs' Motion to Amend the Complaint, the Court should then address Plaintiffs' Motion to Remand.

decedents', Michael Malec McKenna and Allen J. Hoover, and injured, Ruth Zak Leib. Prior to
December 8, 2006, an agent of the Woods Office informed the owner of and/or operator of
and/or security for the building that the security locking system for the entrance to the Woods
Office was broken. However, the security locking system was not repaired before the incident.

Plaintiffs filed their original Complaint at Law on December 29, 2006 against the
purported owners of the building, the building manager and the entity that provided security at
the building in the Circuit Court of Cook County, Illinois. On January 5, 2007, ALLIED
BARTON removed this action to federal court based on diversity jurisdiction. On February 26,
2007, ALLIED BARTON added the Estate of Joseph Jackson as a third-party defendant to this
action with the assumed intention of shifting its liability to a different party. **Two days later,** on
February 28, 2007, Plaintiffs filed a motion for leave to amend her complaint naming the Estate
of Joseph Jackson as an additional defendant.[2]

Defendants' contend Plaintiffs amended their complaint for the sole purpose of
destroying diversity jurisdiction. However, Defendants theory fails to consider Plaintiffs true
intentions. Namely, Plaintiffs seek the same opportunity to pursue an action against Joseph
Jackson who was a prevalent actor in the incident that gave rise to this action. Failing to allow
Plaintiffs to amend their complaints and add the Jackson Estate as a defendant, will unduly
prejudice them by allowing ALLIED BARTON to point the finger at Jackson, yet deny Plaintiffs
this same opportunity. Moreover, it will Plaintiffs from obtaining a judgment against Mr.

---

[2]NACA defendant, in its motion, states that Plaintiffs failed to make reference to the
citizenship of the proposed new Defendant, the Special Administrator of Jackson's Estate.
However, 28 U.S.C. 1332(c)(2) provides "the legal representative of the estate of a decedent shall
be deemed to be a citizen only of the same State as the decedent." Thus, under federal statutory
provisions, the named representative of Joseph Jackson is deemed an Illinois citizen.

-3-

Jackson's estate while permitted ALLLIED BARTON to obtain such a judgment. From the record in ths case, it was clearly ALLIED BARTON'S filing of its third-party action against the Jackson Estate which prompted Plaintiffs' filing of their amended complaints.

Defendants, UST-GEPT; GE ASSET MANAGEMENT, INC.; NACA LTD. PARTNERSHIP; NACA MADISON, LLD.; NACA REALTY CORPORATION; UST XV MADISON, LTD.; and MB REAL ESTATE SERVICES, LLC (hereinafter referenced as "NACA Defendants") also seek to dismiss Plaintiffs' Complaint for failure to state a cause of action. Plaintiffs contend this motion should be denied. Plaintiffs have sufficiently pled the necessary elements needed to entitle themselves a remedy which the law affords. Plaintiffs have since amended their original complaint which further supports a basis to find the defendants owed a duty to prevent the criminal acts of a third party. Therefore this Court should grant Plaintiffs' Motions for Leave to Amend and to Remand, and should deny NACA Defendants' Motion to Dismiss.

**ARGUMENT**

I.    **THIS COURT SHOULD GRANT PLAINTIFFS' MOTIONS FOR LEAVE TO FILE AN AMENDED COMPLAINT ADDING AS A DEFENDANT, THE JACKSON ESTATE.**

The Plaintiffs should be entitled to name the Estate of Joseph Jackson as a defendant.

The issue of joinder of non-diverse parties after removal is governed by 28 U.S.C. §1447(e).

That section provides:

> If after removal the Plaintiff seeks to join additional Defendants whose joinder
> would destroy subject matter jurisdiction, the Court may deny joinder, or permit
> joinder and remand the action to state court.

28 U.S.C. §1447(e). Under 28 U.S.C. §1447(e), joinder of a diverse defendant is at the

-4-

discretion of the court. *Jass v. Prudential Health Care Plain, Inc.*, 88 F.3d 1482, 1492 (7th Cir. 1997). "Whether to grant or deny leave to amend is within the district court's discretion." *Campbell v. Ingersoll Milling Mach. Co.*, 893 F. 2d 925, 927 (7th Cir. 1990) *cert. denied*, 498 U.S. 844 (1990). Four factors have been developed to help determine whether to allow joinder under 28 U.S.C. 1447(e), and they include (1) the plaintiff's motivation in moving to amend, (2) the timeliness of the request, (3) the prejudice to the parties, and 4) other equitable interests. *See Perez v. Arcobaleno Pasta Machines, Inc.*, 261 F.Supp.2d 997, 1001 (N.D. Ill. 2003).

Defendants mischaracterize Plaintiffs sole purpose of filing a motion for leave to amend their complaint was to destroy diversity jurisdiction. However, Plaintiffs offer a reasonable and factual explanation for why they sought leave to amend. First and foremost, on February 22, 2007, this Honorable Court granted ALLIED BARTON's motion for leave to amend and file a third-party complaint naming the Special Administrator of the Estate of Joseph Jackson as a third-party defendant. ALLIED BARTON officially added Joseph Jackson's estate as a third-party defendant in its third-party complaint filed on February 26, 2007. It was after ALLIED BARTON's action that Plaintiffs recognized the need to add the Jackson Estate as a direct defendant. If this Court were to deny Plaintiffs' right to add the Jackson Estate as a defendant, in the event of a trial, they would be unduly prejudiced by the allowance of Defendants to shift blame to Joseph Jackson, yet disallow Plaintiffs the same opportunity. For this reason and for the reasons proferred in the following discussion, this Court should grant Plaintiffs request to amend their complaint.

## A. Plaintiffs' Motive in Seeking Leave to Amend Is Not to Destroy Diversity Jurisdiction.

Plaintiffs purpose and motivation of adding the Jackson estate is two fold: 1) Defendants chose to add the Jackson Estate; and 2) Joseph Jackson is an actor in the event that occurred on December 8, 2006. Although motive is a factor, it is not the sole and necessarily the most relevant factor in this analysis. *See County of Cook v. Philip Morris, Inc*, 1997 WL 667777 (N.D. Ill. 1997) Attached hereto as Exhibit "B." ("Despite the possible "transparent" motives of plaintiff for seeking to add non-diverse parties (for purpose of defeating jurisdiction), a great number of equitable reasons exist to grant plaintiff's motion: No discovery has commenced; plaintiff was not dilatory in bringing this motion; the court has ruled neither on substantive nor procedural issues...").

The defendants heavy reliance on *Bostrom v. Target Corp.* 2006 WL 3370176, (N.D. Ill. 2006) (attached as Ex. "C") is factually distinguishable from the outset as it was the plaintiff, not defendants, who originally sought to add the non-diverse defendant to the complaint. Here, ALLIED BARTON chose to file a third-party action against the Jackson Estate. Plaintiffs can only reasonably assume this was for the reason of escaping personal liability and transferring the blame to Joseph Jackson. If this Court were to deny Plaintiffs request, they will be unduly prejudiced in their ability to obtain a judgment against the Jackson Estate in addition to judgment against the remaining Defendants.

The same is true for all of the case law Defendant relies on--specifically that they are all distinguishable, because in those cases, the plaintiff chose to amend their complaint and add a party as a defendant prior to the defendant(s) adding that party. For instance in *In re*

-6-

*Bridgestone/Firestone Inc, ATX, ATX2, v. Ford Motor Co.*, the plaintiff filed an action against "Ford Motor Co." in Los Angeles Country Superior Court arising out of an accident when plaintiffs Ford Explorer rolled over after the tread allegedly separated on one of her tires. 129 F.Supp.2d 1202 (S.D. Ind. 2001). Defendant timely removed the litigation to federal court based on diversity jurisdiction. *Id.* at 203-1205. After this removal, **plaintiff** sought to amend their complaint to add the non-diverse defendant dealership. The court denied plaintiffs request for leave to amend her complaint concentrating on the motive of the motion. *Id.* The court noted the fact the defendant was known at the time of the initial suit raises suspicion as to why plaintiff did not originally join it. *Id.* at 1205. This issue is not analogous to this matter because Plaintiffs only added the Jackson Estate to their complaints **after** Allied Barton chose to add it.

Moreover, the cases are further distinguishable because Joseph Jackson was a relevant actor to the events which occurred on the date in question, and in the cases cited by the Defendants, the proposed new parties were minimally involved in the incidents. In *Bridgestone*, the plaintiff sought to join a potential defendant, an auto dealership in a products case, who played a minimal role in the incident. *Id.* at 1204-1205. Furthermore, in *Bostrom*, the plaintiffs sought to add the manager of the Target store who may have received notice of a dangerous condition in a premises action, but had no direct involvement in the plaintiff's accident. *Bostrom*, 2006 WL 3370176 at 2. Here, on December 8, 2006, Joseph Jackson was the person who shot and killed Plaintiffs' decedents, Allen Hoover and Micheal Malec McKenna, and injured, Ruth Zak Leib. Thus, the *Bostrom* and *Bridgestone* are distinguishable frin this matter.

-7-

**B.** **Plaintiffs' Timely Filed Their Motion for Leave to Amend Shortly after Allied Barton Added the Jackson Estate in a Third-Party Complaint.**

Plaintiffs filed its original cause of action in state court on December 29, 2006.

Approximately one week later on January 5, 2007, ALLIED BARTON removed the action to the

Northern District of Illinois pursuant to 28 U.S.C. § 1332. On February 26, 2007, ALLIED

BARTON filed a third-party complaint naming the Jackson Estate as a third party defendant.

**Two days later**, on February 28, 2007, Plaintiffs filed a motion for leave to amend their

complaint naming the Jackson Estate as an additional defendant. This string of dates clearly

show that Plaintiffs timely filed their Motions to Amend their Complaints upon finding out that

ALLIED BARTON had added the Jackson Estate as a third party defendant.

The two-day period that Plaintiffs took in requesting leave to file her amended complaint

to include the Jackson Estate as a defendant is not dilatory in nature. Moreover, the timing of

Plaintiffs' motion does not create suspicion of their motives as defendants suggest, but rather,

completely supports their reasoning indicated above. *See Supra A*. The Plaintiffs had ample

opportunity to add Joseph Jackson at an earlier date if their true motivation was to destroy

diversity jurisdiction. The fact of the matter is, Plaintiffs never had intentions of adding Joseph

Jackson as a defendant. But when ALLIED BARTON chose to add Jackson as a third-party

defendant, the Plaintiffs were forced to add the Jackson Estate as a defendant to disallow

ALLIED BARTON from being able to blame a party at trial who the Plaintiffs could not blame

or assess liability to at trial and obtain a judgment based on his percentage of liability.

Simply put, the Plaintiffs did not delay in seeking to name the Jackson Estate after

ALLIED BARTON added the Jackson Estate as a third-party defendant. The Plaintiffs sought

-8-

leave of Court to name the Estate of Joseph Jackson as a defendant within two days of ALLIED

BARTON naming the Estate of Joseph Jackson as a third-party defendant and within 54 days of

removal . *See Philip Morris*, 1997 WL 66777 at 2 ("Two months and three weeks is hardly an

undue delay, especially where no significant activity has occurred in the action."); *see also*

*Witkowski v. Toyota Indus. Equipment, Div. of Toyota Motor Sales* , 1992 WL 159267 (N.D. Ill.

1992) Attached hereto as Exhibit "D" (five months cannot be considered dilatory to the extent to

deny plaintiffs right leave to file amended complaint).

### C. This Court Will Severely Prejudice Plaintiffs if it Refuses to Honor Their Request of Adding the Jackson Estate as a Defendant.

As stated, the Plaintiffs would be prejudiced if ALLIED BARTON is permitted to assess

fault to a party that the Plaintiffs cannot pursue liability against at trial. Moreover, courts have

typically allowed a plaintiff to name a party as a defendant when they have already been named

as a third-party defendant. In *Perez v. Arcobaleno Pasta Machines*, 261 F.Supp. 2d 997, 998-999

(N.D.Ill 2003), a plaintiff was injured when she was investigating a problem with a dough

sheeter at her job. *Id.* Her hand was pulled in the sheeter and crushed. *Id.* The plaintiff, an

Illinois resident, filed a complaint against a foreign corporation defendant. *Id.* The defendant

then removed the case to federal court and subsequently filed a third-party complaint against

plaintiff's employer, Pasta, an Illinois corporation. *Id.* In allowing plaintiff leave to file an

amended complaint against Pasta , and remand the case to state court, the Court stated, "the

Plaintiff may not obtain full relief if the amendment is not granted and is liable to her." *Id.* at

1002. Plaintiffs' situation is nearly identical from a procedural standpoint. Plaintiffs' motivation

for adding the Jackson Estate was not to destroy diversity, but rather to entitle themselves the

ability to a full recovery at trial.

Additional reasoning illustrates that Defendants will not experience prejudice if this Court were to allow Plaintiffs' motion. Specifically, Defendants are not prejudiced because: (1) this was a local event which took place at 500 W. Madison, City of Chicago, and (2) Defendants have failed to provide any actual bias as a result of allowing the Jackson Estate to be added as a defendant.

Moreover, Defendants argument that they will be prejudiced if this case was remanded to state court is without merit. Defendants voluntarily chose to do business within the jurisdiction of the State Court and, in fact, one of the Defendants, NACA LTD PARTNERSHIP, has used the power of the Circuit Court of Cook County, Chicago, Illinois as a plaintiff by filing an action entitled, NACA Ltd. Partnership v. DSeattles Best Coffee, LLC, docket number 04 L 005290 (see attached as Exhibit E). For Defendants to suggest that they would be unfairly treated, or that the State Court would be biased against them, is unsupported by any evidence proferred by the Defendants and should not be entertained or given any weight by this Court.

Finally, the Plaintiffs urge this Court to focus on the prejudice Plaintiffs will experience if this Court were to deny their entitlement to a full recovery. Essentially, the Defendants are asking this Court to prevent the Plaintiffs from seeking recovery from a culpable party while at the same time pursuing claims against that party. For that reason and based on the analysis of the relevant factors, the Court should grant Plaintiffs' Motion for Leave to Amend her Complaint and to add the Special Administrator of Jackson's Estate as a party Defendant.

## II.   THIS COURT SHOULD DENY NACA DEFENDANTS' MOTION TO DISMISS

### A.   Standard of Review

Federal notice pleading requires plaintiff to set forth her claim in a short and plain statement which provides the defendant with notice of her claim. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993). When reviewing a motion to dismiss, this Court must accept all factual allegations in the Plaintiff's complaint and draw all reasonable inferences from the facts in a light most favorable to the plaintiff. *Arazie v. Mullane*, 2 F.3d 1456, 1465 (7th Cir. 1993). This Court may only dismiss Plaintiff's claim if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### B.   The NACA Defendants Owed the Plaintiffs a Duty to Protect Them from the Criminal Acts of a Third Party When it Failed to Exercise Due Care in the Maintenance of the Building.

A landlord may be liable for criminal acts of third parties when it "voluntarily undertakes to provide security measures, but performs the undertaking negligently, if the negligence is the proximate cause of the injury to the plaintiff." *Rowe v. State Bank of Lombard*, 125 Ill.2d 203, 217; 531 N.E.3d 1358, 1365 (1988). The proper inquiry is whether the landlord, under the facts of each case, assumed a duty to protect tenants. *Id.* at 217, 1365. Whether the retention of the control includes a duty to protect against foreseeable third party criminal attacks depends upon the normal and usual function of such control. *Id.* at 217-220, 1365-67. It properly follows that if a landlord retains control of a portion of premises leased to the tenant, it has the duty to use ordinary care in maintaining that part of the premises in a reasonably safe condition. *Id.* at 220,

-11-

1366. *See also Drewisk v. Interstate Terminals, Inc.*, 42 Ill.2d 345; 247 N.E.2d 877 (1969).

### i. Plaintiffs' Amended Complaints Allege Negligent Maintenance of a Defective Security Door Which Allowed Joseph Jackson Access to the Office Where Plaintiffs' Decedents and Plaintiff, Ruth Zak Leib Worked.

NACA Defendants contend this Court cannot impose a duty on them because Plaintiffs

failed to make any allegations that the perpetrator gained entry to the building because of a defect

in the building, its doors, or locks, which could have been repaired and because Plaintiffs do not

assert any allegations of prior criminal conduct at the involved premises. (*See* NACA's Response

and Motion to Dismiss p. 8-9). In short, NACA Defendants' contentions are erroneous.

Plaintiffs have sought leave to amend their complaint which is the subject of the instant motion

to dismiss and that complaint makes allegations that the security door to the Woods' offices was

inoperative and/or defective. *See Generally* First Amended Complaint at Law, ¶¶ 18-20 Ex. A.

Plaintiffs' Amended Complaint also includes allegations of negligent implementation and/or

process of controlling limited access to the building. Ex. A ¶¶ 11-17.

NACA Defendants' second contention is also misguided. Illinois law does require prior

incidents of criminal activity before imposing liability on a landowner/landlord. *Shea v.*

*Preservation Chicago, Inc.*, 206 Ill. App. 3d 657, 663; 565 N.E.2d 20, 24-25 (1st Dist. 1991).

The court in *Shea* stated:

> A rigid application of a "prior incidents" rule "has the effect of discouraging landowners
> from taking adequate measures to protect premises which they know are dangerous.
> Moreover, under the rule, the first victim always loses, while subsequent victims are
> permitted recovery. Surely, a landowner should not get one free assault before he can
> be held liable for criminal acts.

*Id.* at 663, 25 citing *Isaacs v. Huntington Memorial Hosp.*, 38 Cal. 3d 112, 125-26 (1985). In

*Shea*, the was aware of an inoperable interior security door. *id.* at 663-665, 23-26. The plaintiff

-12-

alleged in her complaint that it was the defendant's negligent failure to repair and maintain the door which permitted the unauthorized entry of an intruder on the premises. *Id.* at 664, 25. On appeal, the court reversed a trial court's dismissal based on the reasoning that a reasonable person in "defendants' position would have been aware of the risks of unauthorized entry and resulting criminal attacks by third persons, posed by an inoperable security door." *Id.* In furtherance, the court found the record did not demonstrate the repairing of the security door and lock was prohibitive, given the risks of injuries due to the malfunction. *Id.*

Moreover, Plaintiffs are not required to show prior criminal activity to maintain their allegations. With reliance on *Mims v. New York Life Ins.*, 133 Ill. App. 283; 273 N.E.2d 186 (1st Dist. 1971), which the Supreme Court in *Rowe* cited with approval, the *Shea* court disagreed with defendants' argument that prior incidents of the same criminal activity must have occurred to establish defendants' liability. 206 Ill. App. 3d at 663, 565 N.E.2d at 25 . In *Mims*, the Court found that a landlord can be held liable when plaintiff's home was burglarized despite no record of previous criminal conduct on the relevant premises. Thus, previous criminal conduct is not required to impute liability on the owner of a premises.

Here, the fact that no prior criminal incidents occurred on the premises in question is not indicative of whether the criminal activity was reasonably foreseeable. Rather, as *Shea* makes clear, the fact a security door is defective can place defendants in position that a unauthorized entry and subsequent attack on an innocent bystander is reasonably foreseeable. 206 Ill app. 3d at 663, 565 N.E.2d at 25. The Plaintiffs allegations make clear NACA Defendants were properly informed that the system of locking the door was broken and in need of repair. Ex. A, ¶ 20. A reasonable person in NACA Defendants' position would be aware of the danger presented

-13-

by the defective security door and the possibility of an unauthorized. Moreover, the costs and/or burdens in fixing the broken door did not outweigh the potential consequences of an entry of an unauthorized person.

The NACA Defendants reliance on *Kolodziejzak v. Melvin Simon & Associates*, is also distinguishable from the current issue. 292 Ill. App. 3d 490; 685 N.E. 2d 985 (1st Dist. 1997). In *Kolodziejzak,* the plaintiff was shot while at an outdoor strip mall. *Id.* Although the defendants employed a security company to patrol the premises in question, the court concluded the defendant/landlord costs in protecting all third parties from attacks at the shopping center was too burdensome. *Id.* "The shopping center's common areas are large and open and Simon Management had only attenuated control over these areas." *Id.* at 498, 991.

The facts of *Kolodziejak* are clearly distinguishable from both *Shea,* and more importantly, this case. Here, the NACA Defendants were to monitor the entry of a single building located at 500 W. Madison, Chicago, IL, unlike the large and open common area of a strip mall. Furthermore, like *Shea* and unlike *Kolodziejzak.,* the NACA Defendant land owners and/or security service of the building were made aware of a **security door** which was broken and in need of maintenance. The court in *Kolodziejzak* emphasized the excessive burden which would be imposed on the NACA Defendants if they were found responsible and liable in keeping plaintiff free of all third party criminal contact in such a large area. Here, the NACA Defendants were not under such burden in fixing one inoperable security door.

As *Rowe v. State Bank of Lombard* makes clear, the totality of the circumstances must be taken into consideration when determining whether the landowner owed a duty to the tenants. 125 Ill. 2d 203; 531 N.E.3d 1358 (1988). Although foreseeability is an important factor, it is not

-14-

the sole determination of whether a duty exists. *Id.* at 227, 1369-70 . "Whether a duty exists

depends on a consideration of the likelihood of injury, the magnitude of the burden to guard

against it and the consequences of placing that burden upon the NACA Defendant." *Id.* at 228,

1370 citing *Lance v. Senior,* 36 Ill.2d 516, 518; 224 N.E.2d 231 (1967).

    In *Rowe,* the landlord retained control over a portion of the premises which the landlord

was aware, or should have been aware of the risks created by her failure to exercise due care in

the retained premises. *Id,* 125 Ill.2d at 225- 229, 531 N.E.3d at 1367-1371. The landlord's

retention of the access to individual units, and the manufacture and control of master keys to gain

such access, constituted a voluntary assumption of duty. The landlord was in the best position to

protect against unauthorized entries from third parties. *Id.* The crimes were within the scope of

the foreseeable risk created by the inadequate control with regard to unaccounted for keys. *Id.*

The purpose of having locks is to prevent entries by intruders and eliminate subsequent criminal

conduct. *Id.* "Although Burglary standing alone is a crime against property interests, it also

involves a high risk of personal injury or death if the intruder is confronted." *Id.* at 227, 1369 *see*

*also People v. Bales,* 108 Ill.2d 182, 194; 483 N.E.2d 517 (1985) (emphasis added). As such, in

*Rowe,* the Supreme Court found the record to show that the landlord took no reasonable

precautions to prevent foreseeable unauthorized entries and was therefore liable for reasonably

foreseeable criminal acts of third persons caused by the landlords negligence. *Rowe,* 125 Ill2d at

223, 531 N.E.3d at 1364.

    The holding in *Rowe* further supports Plaintiff's position as the situation is analogous.

The Plaintiffs specifically allege:

    20.    Prior to December 8, 2006, an agent of Woods, Philips, Katz, Clark & Mortimer

notified the owner and/or operator of the building and/or property that the system
of locking the entry to its tenant space was broken and in need of repair by the
owner and/or operator of the building and/or property.

Ex. A, p. 4 ¶ 20. Thus, the Plaintiffs allege that the NACA Defendants were made aware of the

defect and had a duty to maintain and fix the broken door. Like *Rowe*, the NACA Defendants

stood in the best position to make the necessary changes to ensure adequate security for the

Plaintiffs. The purpose of the security door was to prevent intruders and the possibility of

reasonably foreseeable criminal conduct of third parties. The NACA Defendants' burden to

guard against unlawful entry by third parties was relatively low in this case. The NACA

Defendants undertook the duty of providing security to the users of the premise in question by

providing doors requiring keys for entrance. NACA Defendants may have prevented this attack

by simply performing its maintenance duties and subsequently fixing the broken door. The

burden of making such repairs were minimal compared to the possibility of harm to an invitee in

the event of an intruder break in. Thus, liability may attach to their failure

### ii. The Allegations in Plaintiffs' First Amended Complaint Support a Finding That the NACA Defendants Voluntarily Assumed a Duty to Prevent the Criminal Attacks Here Involved.

NACA Defendants' motion to dismiss completely neglects all of Plaintiffs allegations

which support a cause of action that the NACA Defendants assumed a duty. Liability can arise

from negligent performance of a voluntary undertaking. *Nelson v. Union Wire Rope Corp.*, 31

Ill. 2d 69, 74; 199 N.E.2d 769, 773 (1964). This point was affirmed in *Pippen v Chicago

Housing Authority*, 78 Ill. 2d 204, 210; 399 N.E.2d 596, 599-600 (1979).

NACA Defendants' reliance on *Morgan v. East Delaware Condominium Association*,

231 Ill. App. 3d 208; 595 N.E.2d 36 (1st Dist. 1992) is factually distinguishable from the case at

-16-

hand. In *Morgan*, the plaintiff was assaulted, battered and robbed at gunpoint by an unknown

third person on the premises of her apartment complex. The unknown third person gained access

to the apartment complex after he approached the doorman and said "Unit 13G." *Id.* at 212, 39.

The doorman then called the tenant in unit 13G who told the doorman to "Let him up." *Id.* The

doorman further testified that he recognized the tenants voice on the other line and that earlier in

the evening the tenant had told the doorman he was expecting guests. *Id.* at 213, 39. After

following proper protocol, the doorman allowed the unknown third party to enter the apartment

complex, where he ultimately assaulted the plaintiff. *Id.*

First and foremost, this case is distinguishable because the motion before the court in

*Morgan,* was for summary judgment. Here, the motion before the Court is to dismiss the

complaint for failure to state a claim. In Plaintiffs' First Amended Complaint, Plaintiffs

specifically alleges:

> 10.    On or about December 8, 2006, the owner, operator and/or security service of the
>         building and/or property controlled access to the building.

> 11.    On or about December 8, 2006, the owner, operator, and/or security service of the
>         building and/or property controlled access to the upper floors of the building.

> 12.    On or about December 8, 2006, the owner, operator, and/or security service of the
>         building and/or property limited access to the upper floors of the building.

> 13.    Prior to December 8, 2006, the owner, operator and/or security service of the
>         building and/or property devised and implemented a plan and/or process for
>         controlling and/or limiting access to the building.

> •            •               •                •

> 16.    On and before December 8, 2006, the owner and/or operator of the building
>         and/or property devised and implemented a plan and/or process for managing
>         and/or operating the building.

-17-

Ex. A, p. 3, ¶¶ 10-13, 16. Plaintiffs further allege the NACA Defendants were negligent in a) failing to provide adequate building security; or b) failing to provide a safe and secure work environment; or c) failing to have and/or implement a standard operating procedure of keeping a record of who and when a person is denied access to the building; or d) failing to properly train their security personnel. *See Generally*, Ex. A ¶ 31. Thus, Plaintiffs' allegations clearly support a finding that NACA Defendants undertook the duty of providing security measures to prevent unwarranted third parties from entering the upper floors of the commercial property. It is inconceivable to Plaintiffs that the NACA Defendants provided security measures for any other reason than to prevent unwarranted visitors from accessing the upper floors of the building. Therefore, based on Plaintiffs' allegations, the Plaintiffs have adequately alleged that the NACA Defendants undertook a duty to provide security to the upper floors.

### iii. NACA Defendants Misapprehend the Holding of *Rowe*.

Contrary to NACA Defendants' assertion, *Rowe v. State Bank of Lombard* is not completely instructive on the issue of a landlord's duty to notify the police prior to the commission of a crime on the landlord's property in this case. 125 Ill. 2d 203; 531 N.E.2d 1358 (1998). In *Rowe,* the plaintiff brought an action against the NACA Defendant landowners, managers, developers, among others when she sustained personal injuries after being attacked while working at a large office park. *Id* at 208, 1360. The plaintiff in *Rowe* alleged that the NACA Defendant assumed a duty to protect against criminal acts because he responded to a call from a woman working to investigate the presence of a possible trespasser earlier on the day of the attacks. *Id* at 211, 1362. In her allegation, the plaintiff claims the NACA Defendant should have called the police and informed them of the possible trespasser. *Id* at 207-212; 1359-1364.

-18-

The court disagreed with the plaintiff, in view of the fact that the trespasser, who was seen at the crime scene earlier in the day, did not appear to be committing a crime or acting in a disturbing manner. *Id.* at 230, 1381.

Here, Joseph Jackson approached one or more of the NACA Defendants' employees to gain entry. Although minimal discovery has taken place, it appears Joseph Jackson was initially denied permission to access the above floors of the commercial premises. It was after this initial denial that Joseph Jackson eventually gained entry to the upper floors. Plaintiff alleges Joseph Jackson went to the loading dock at 500 W. Madison, City of Chicago, and gained access to the building. Ex. A, ¶ 25. Plaintiff then alleges Joseph Jackson was taken to the 38th floor by an employee and/or agent of ALLIEDBARTON and the owners and/or operators of the building. Ex. A. ¶ 26. This sequence of events would have placed a reasonable person in NACA Defendants position on notice that unlawful or at least unauthorized activity was taking place. Prior to essential discovery and viewing this allegation in the light most favorable to Plaintiffs, Plaintiffs' Complaint should not be dismissed for failure to state a claim.

-19-

## CONCLUSION

WHEREFORE, Plaintiffs, SUZANNE E. MALEC McKENNA, as Executor and Personal

Representative of the Estate of MICHAEL R. MALEC McKENNA, deceased; LOUISE

HOOVER, as Executor of the Estate of ALLEN J. HOOVER, deceased; and RUTH ZAK LEIB,

by and through their attorneys, POWER, ROGERS & SMITH, P.C., requests that this Honorable

Court grant their Motion for Leave to File Amended Complaint and Motion to Remand; and deny

NACA Defendants' Motion to Dismiss Counts III though XII of Plaintiff's First Amended

Complaint with prejudice.

Respectfully Submitted,

By: /s/ Larry R. Rogers
(One of their Attorneys)

Joseph A. Power, Jr.
Larry R. Rogers
Brian LaCien
POWER, ROGERS & SMITH, P.C.
70 W. Madison Street
55th Floor
Chicago, IL 60602
T: 312.236.9381

-20-